Rick H. Knock, Esq. *(CSB #170170)*
CLEMENTS & KNOCK, LLP
7825 Fay Avenue, Suite 200
La Jolla, CA 92037
(619) 686-6900; Fax: (866) 433-2690

Attorney for Plaintiff
LINCOLN FINANCE COMPANY
dba LINCOLN FINANCIAL SERVICES

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINCOLN FINANCE COMPANY, INC. dba LINCOLN FINANCIAL SERVICES,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>JOE MANUEL LOUCAO, individually; JO ANN LOUCAO, individually; PACIFIC COAST MOTORS, INC., dba, PACIFIC COAST MOTORS, a California Corporation; and ROES 1-10, inclusive,<br><br>　　　　Defendants | **Case No. 14-00601-MM7**<br><br>**Adversary No. 14-90045-MM**<br><br>**FIRST AMENDED COMPLAINT FOR**<br><br>**(1) FALSE PRETENSES**<br>**(2) FRAUD**<br>**(3) FALSE REPRESENTATIONS** |

Comes now LINCOLN FINANCE COMPANY dba LINCOLN FINANCIAL SERVICES (hereinafter "Plaintiff) and for causes of action against the Defendants, and each of them, alleges as follows:

**I.**

**JURISDICATION AND VENUE**

1. This proceeding arises in and relates to the Chapter 7 bankruptcy case of Joe Loucao and Joann Loucao, DEBTORS, case number 14-00601-MM7, filed January 30, 2014.

2. 　The adversary proceeding is commenced under the Federal Rule of Bankruptcy Procedure.

1

**FIRST AMENDED COMPLAINT**

3. The Court has jurisdiction of this contested matter under 28 U.S.C. 1334(a) and (b), 157(b)(1), 157(b)(2), and other provisions of the Bankruptcy Code and the Orders of the District Court.

4. This court possesses personal jurisdiction over each Defendant based upon each Defendants presence and/or transaction of business and/or contracts within this District. The court may hear this proceeding as to the corporate defendant PACIFIC COAST MOTORS, INC., because though it is not a core proceeding, it is otherwise related to a case under title 11 pursuant to 28 U.S.C. 157(c).

## II.

## PARTIES

5. Plaintiff is unaware of the true names of defendants sued herein by the fictitious names of DOES 1 through 10, inclusive and therefore sues those defendants by those fictitious names under, pursuant to, and in accordance with provisions of Section 474 of the Code of Civil Procedure. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a Doe is legally responsible in some manner for the events and happenings herein referred to and caused damages proximately thereby to Plaintiff as herein alleged.

6. Plaintiff LINCOLN FINANCIAL COMPANY (hereinafter, "LINCOLN") at all times mentioned herein was, and now is a corporation duly organized and existing under and by virtue of the laws of the State of California and was authorized to make Loans by the State of California and doing business under the fictitious business name of Lincoln Financial Services and has Filed the Statement and Published the Notice required by the Business and Professions Code.

7. Plaintiff is informed and believes and thereon alleges that the Defendants, and each of them, at all times mentioned were the agents, servants, or employees of each of the other Defendants and were acting within the scope and course of those relationships and authorized and ratified the acts of the others, and each of them.

8. Defendant PACIFIC COAST MOTORS, INC, dba PACIFIC COAST MOTORS (hereinafter, "PACIFIC") at all times mention herein was a corporation duly organized and existing under and by virtue of the laws of the State of California and authorized by the State of California and licensed to sell automobiles to consumers. Plaintiff is further informed and believes and based

upon such information and belief alleges that Defendants JOE and JOANNE LOUCAO (collectively "LOUCAOS" and or "DEBTORS"), are now and was, at all times herein mentioned, individuals residing in the County of San Diego, State of California, and now and were, at all times herein mentioned, the sole shareholders, directors and Officers of Defendant PACIFIC.

9.     The true names and capacities of defendants ROES 1 through 10, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will amend its Complaint to allege said Doe defendants' true names and capacities when the same have been ascertained.  Plaintiff is informed and believes, and based upon such information and belief alleges that each defendant designated herein is responsible in such actionable manner for the occurrences and injuries alleged herein. Further, at all times mentioned herein, defendants LOUCAOS and DOES 1 through 10 and each of them, were an owner, co-owner, and agent, representative, and/or alter ego of its co-defendant PACIFIC, or otherwise acting on behalf of each of the other and in doing said things were acting within the scope and authorities as an owner, co-owner, agent, representative, partner, and/or alter ego of said co-defendants, with the full knowledge, permission and consent of each and every remaining said defendant, each said defendant having ratified the acts of the other said defendants.

## III.

## GENERAL ALLEGATIONS

10.     Plaintiff alleges that the LOUCAOS are, and at all times herein mentioned were shareholders of the stock of PACIFIC and/or promoters of PACIFIC and/or subscribers to stock therein. There exists, and at all times mentioned existed, a unity of interest between the LOUCAOS and PACIFIC such that any individuality and separateness between the LOUCAOS and PACIFIC have ceased, and PACIFIC is the alter ego of the LOUCAOS as follows:

(a)     Plaintiff alleges that PACIFIC is, and at all times mentioned was a mere shell and sham without capital, assets, stock or stockholders. PACIFIC was conceived, intended, and used by defendants as a device to avoid individual liability and for the purpose of substituting a financially insolvent corporation in the place of LOUCAOS.  At no time after PACIFIC become incorporated was any stock authorized to be issued or issued nor has any permit for issuance of stock been applied for with the Commissioner of Corporations.

(b) Plaintiff alleges that PACIFIC is, and at all times mentioned was so inadequately capitalized that, compared with the business done by PACIFIC and the risks and loss attendant thereto, its capitalization was illusory or trifling.

(c) Plaintiff alleges that PACIFIC is, and at all times mentioned is, and at all times mentioned, the alter ego of LOUCAOS and there exists a unity of ownership between said LOUCAOS such that any separateness has ceased to exist in that LOUCAOS used assets of PACIFIC for their personal use, cause assets of PACIFIC to be transferred to them without adequate consideration, and withdrew funds from PACIFIC bank accounts for their personal use.

(d) Plaintiff alleges that PACIFIC is, and at all times mentioned is, and at all times mentioned was a mere shell, instrumentality and conduit through which LOUCAOS carried on their business in the name of PACIFIC exactly as they conducted it previous to incorporation exercising complete control and dominance of such business to such extent that any individuality or separateness of PACIFIC and LOUCAOS does not now, and at any time herein mentioned did not exist.

(e) Plaintiff alleges that PACIFIC is, and at all times mentioned is, and at all times mentioned controlled, dominated, and operated by LOUCAOS as their individual business and alter ego, in that the activities and business of PACIFIC were carried out without the holding of Directors of Shareholder meetings, no records or minutes of any corporate proceedings maintained, and LOUCAOS entered into personal transactions with PACIFIC without the approval of other directors or shareholders.

(f) Plaintiff alleges that the adherence to the fiction of separate existence of PACIFIC as an entity distinct from LOUCAOS would permit abuse of the corporate privilege and would sanction fraud in that LOUCAOS caused funds to be withdrawn from PACIFIC and distributed said funds without any consideration to PACIFIC all for the purpose of avoiding and preventing attachment and execution by creditors, including Plaintiff, thereby rendering PACIFIC insolvent and unable to meet its obligations.

(g) Plaintiff alleges that the adherence to the fiction of separate existence of PACIFIC as an entity distinct from LOUCAOS would permit abuse of the corporate privilege and produce an inequitable result in that LOUCAOS represented to Plaintiff that said shareholders would be

**FIRST AMENDED COMPLAINT**

1  responsible for corporate obligations and the transaction complained of herein was entered under
2  the belief that LOUCAOS were, in reality, the true parties obligated.

3      (h)   Plaintiff alleges that the adherence to the fiction of separate existence of PACIFIC as
4  an entity distinct from LOUCAOS would permit abuse of the corporate privilege and produce an
5  inequitable result in that LOUCAOS guaranteed certain PACIFIC obligations thereby enabling
6  PACIFIC to return to active business without adequate financing and without capital stock, which
7  return to business invited the public generally and Plaintiff in particular to deal with PACIFIC to
8  Plaintiffs loss as herein pleaded.

9  11.    As a result of the act and omissions complained of hereinabove, said LOUCAOS are jointly
10 and severally liable for all relief sought herein against PACIFIC by Plaintiff.

11 12     Plaintiff and PACIFIC had entered into an express Assignment Without Recourse
12 Dealership Agreement *("Agreement")* on April 2, 2009, in San Diego, California. The *Agreement*
13 between plaintiff and PACIFIC governed plaintiffs purchase from PACIFIC certain Motor Vehicle
14 Contracts and Security Agreements (hereinafter "Contract" or "Contracts) evidencing installment
15 sales of Motor Vehicles and other related things. The *Agreement* provided its terms would apply to
16 all Contracts purchased by plaintiff from PACIFIC unless the parties agreed in writing to the
17 contrary. The *Agreement* states PACIFIC "covenants, warrants and represents that all
18 CONTRACTS offered by DEALER to FINANCE COMPANY will comply with all requirements
19 of the Federal Truth in Lending Act... and all other Federal, State and Local Laws, regulations and
20 rules applicable to such CONTRACT and that Buyers have no right of setoff, dispute or claim as to
21 the monies due on such CONTRACT." The Agreement also states that PACIFIC "covenants,
22 warrants and represents that the amount shown on the CONTRACT as received as "Down Payment"
23 was actually paid by Buyers, that DEALER did not assist Buyers in getting a loan for all or part of
24 the down payment or any other CONTRACT payment..." Said *Agreement* also contained a clause
25 whereby PACIFIC agreed to pay the costs of suit or action and reasonable attorney fees incurred by
26 plaintiff to enforce the performance of any obligation of PACIFIC under the *Agreement*. Defendant
27 JOE LOUCAO signed said *Agreement* on behalf of PACIFIC.

28 13.    Plaintiff is informed and believes and thereon alleges that on or about February 21, 2012,
Gadino Garcia, an individual, purchased a used 2006 Chevrolet vehicle from PACIFIC as evidenced

by a Retail Installment Sales Contract - Simple Finance Charge (hereinafter, "Garcia Contract"). The "Garcia Contract" indicated Garcia put a total down payment of $2,500 to purchase the vehicle. Plaintiff is informed and believes and therefore alleges that Garcia did not put a down payment of $2,500 toward the purchase of the vehicle but, instead, entered into a second contract with PACIFIC to borrow the down payment from PACIFIC. This act was in violation of the Automobile Sales Finance Act ("ASFA"), Regulation Z of the Federal Truth in Lending Act ("FTLA"), and the Consumer Legal Remedy Act ("CLRA") which constituted a breach of the *Agreement.* Further, if there were indeed undisclosed deferred payments then plaintiff was made unaware by PACIFIC of a material term to the purchase of the RISCs; to wit: that there were other creditors for the vehicle besides plaintiff and the RISC did not contain all the information relevant to the transaction. In fact, DEBTORS even admit their illegal conduct in their Chapter 7 bankruptcy filing, Schedule B, that they had "100% ownership of sole-proprietorship Oliver Financial" and that "[t]his is an in-house financing business ... set up merely to make prospective buyers of cars think of the financing as a separate entity from the used car lot. However, all funds are owed and paid to Pacific Coast Motors. The financing company is in essence a shell used to send invoices to buyers for payments of cars from another entity other than Pacific Coast Motors to make people respect their payment plans more than paying directly to a "used car lot." Entity has no value without Pacific Coast Motors, because it is merely used to collect for Pacific Coast Motors and has no Account Receivables of their own." Said practice, besides duping consumers into believing there was a licensed finance company, violated the ASFA prohibition from used car dealers lending monies to consumers for down payments.

14.     Plaintiff is informed and believes and thereon alleges that on or about September 17 012, Juan C. Escolero and Mayra Alonso Arenas purchased a used 2008 Chevrolet vehicle from ACTFIC as evidenced by a Retail Installment Sales Contract - Simple Finance Charge (hereinafter, Escolero Contract"). The "Escalero Contract" indicated Escolero and Arenas put a total down payment of $2,500 to purchase the vehicle. Plaintiff is informed and believes and therefore alleges that Escolaro and Arenas did not put a down payment of $2,500 toward the purchase of the vehicle but, instead, entered into a second contract with PACIFIC to borrow the down payment from PACIFIC. This act was in violation of the Automobile Sales Finance Act ("ASFA"), Regulation Z if the Federal Truth

6

**FIRST AMENDED COMPLAINT**

in Lending Act ("FTLA"), and the Consumer Legal Remedy Act ("CLRA") which constituted a breach of the *Agreement.* Further, if there were indeed undisclosed deferred payments then plaintiff was made unaware by PACIFIC of a material term to the purchase of the RISCs; to wit: that there were other creditors for the vehicle besides plaintiff and the RISC did not contain all the information relevant to the transaction. In fact, DEBTORS even admit their illegal conduct in their Chapter 7 bankruptcy filing, Schedule B, that they had "100% ownership of sole-proprietorship Oliver Financial" and that "[t]his is an in-house financing business ... set up merely o make prospective buyers of cars think of the financing as a separate entity from the used car lot. However, all funds are owed and paid to Pacific Coast Motors. The financing company is in essence a shell used to send invoices to buyers for payments of cars from another entity other than PACIFIC to make people respect their payment plans more than paying directly to a used car lot." Entity has no value without PACIFIC, because it is merely used to collect for Pacific Coast Motors and has no Account Receivables of their own." Plaintiff alleges that Oliver Financial is and never has been a licensed lender in the State of California, further demonstrating DEFENDANTS' deceptive practices. Said practice, besides duping consumers into believing there was a licensed finance company, violated the ASFA prohibition from used car dealers lending monies to consumers for down payments.

15. Plaintiff is informed and believes and thereon alleges that on or about October 7, *1012,* Albero Meza, an individual, purchased a used 2008 Ford Ranger vehicle from PACIFIC as evidenced by a Retail Installment Sales Contract - Simple Finance Charge (hereinafter, "Meza Contract"). The "Meza Contract" indicated Meza put a total down payment of $2,000 to purchase her vehicle. Plaintiff is informed and believes and therefore alleges that Meza did not put a down payment of $2,000 toward the purchase of the vehicle but, instead, entered into a second contract with PACIFIC to borrow the down payment from PACIFIC. This act was in violation of the Automobile Sales Finance Act ("ASFA"), Regulation Z of the Federal Truth in Lending Act 'FTLA"), and the Consumer Legal Remedy Act ("CLRA") which constituted a breach of the *agreement.* Further, if there were indeed undisclosed deferred payments then plaintiff was made unaware by PACIFIC of a material term to the purchase of the RISCs; to wit: that there were other creditors for the vehicle besides plaintiff and the RISC did not contain all the information relevant o

7

**FIRST AMENDED COMPLAINT**

the transaction. In fact, DEBTORS even admit their illegal conduct in their Chapter 7 bankruptcy filing, Schedule B, that they had "100% ownership of sole-proprietorship Oliver Financial" and that '[t]his is an in-house financing business ... set up merely to make prospective buyers of cars think )f the financing as a separate entity from the used car lot. However, all funds are owed and paid to 'Pacific Coast Motors. The financing company is in essence a shell used to send invoices to buyers or payments of cars from another entity other than Pacific Coast Motors to make people respect heir payment plans more than paying directly to a "used car lot." Entity has no value without Pacific Coast Motors, because it is merely used to collect for Pacific Coast Motors and has no Account Receivables of their own." Said practice, besides duping consumers into believing there was a licensed finance company, violated the ASFA prohibition from used car dealers lending monies to consumers for down payments.

16.     Plaintiff purchased the "Garcia Contract" from PACIFIC pursuant to the *Agreement* for $10,433.70 thereby establishing a security interest in the vehicle as Lien holder.

17.     Plaintiff purchased the "Escolero Contract" from PACIFIC pursuant to the *Agreement* for $8,315.25 thereby establishing a security interest in the vehicle as Lien holder.

18.     Plaintiff purchased the "Meza Contract" from PACIFIC pursuant to the *Agreement* for $8,670.20 thereby establishing a security interest in the vehicle as Lien holder.

19.     As a result of defendants' conduct plaintiff has suffered damages as more fully described below.

## FIRST CAUSE OF ACTION
## FALSE PRETENSES [11 USC 523(a)(2)(A)]

(As Against All Defendants)

20.     Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 19 as though fully set forth at length.

21.     DEFENDANTS actively, expressly, and knowingly concealed important facts from plaintiff that were contrived to mislead plaintiff's understanding of the transaction, and which did in fact wrongfully induce plaintiff to advance money to the DEFENDANTS under said false pretenses. These important facts were that the *Contracts* failed to comply with statutes and that the vehicle purchasers did not actually pay the down payment contained in the *Contracts.* In fact, DEBTORS

8

**FIRST AMENDED COMPLAINT**

even admit their intentionally illegal conduct in their Chapter 7 bankruptcy filing, Schedule B, that they had "100% ownership of sole-proprietorship Oliver Financial" and that "[t]his is an in-house financing business ... set up merely to make prospective buyers of cars think of the financing as a separate entity from the used car lot. However, all funds are owed and paid to Pacific Coast Motors. The financing company is in essence a shell used to send invoices to buyers for payments of cars from another entity other than Pacific Coast Motors to make people respect their payment plans more than paying directly to a "used car lot." Entity has no value without Pacific Coast Motors, because it is merely used to collect for Pacific Coast Motors and has no Account Receivables of their own." Said practice, besides duping consumers into believing there was a licensed finance company, violated the ASFA prohibition from used car dealers lending monies to consumers for down payments. Plaintiff did not know of this fact when purchasing the *Contracts* from PACIFIC. DEFENDANTS intended to deceive plaintiff and others by concealing this fact and selling the *Contracts* to plaintiff under said false pretenses. Plaintiff justifiably relied upon these defendants' false pretenses regarding the transactions they had entered into with the consumers, and plaintiff purchased the *Contracts* from PACIFIC, the purchase of which has caused plaintiff substantial damages.[1]

22.     The false pretenses have resulted in damages to plaintiff. These damages include, but are not limited to putting plaintiff in a position where it (as the holder in due course of said contracts) is subject to claims from the aforementioned vehicle purchasers for violation of several statutes, actual damages in the amount of monies paid for the *Contracts* to DEFENDANTS, the costs of suit and attorney fees, prejudgment interest and consequential damages. This conduct was approved, ratified and/or authorized by one or more of the officers, directors or managing agent of said defendants as more fully described above.

---

[1] DEBTORS also attempt to dupe this Court by stating in their STATEMENT OF FINANCIAL AFFAIRS that an identical action filed in San Diego Superior Court by Lincoln Finance (Case No. 37-2013-000301083-CU-FR-CTL) is in Mediation. In fact, the mediation was cancelled because DEBTORS refused to attend even after this plaintiff paid its mediation fees. The case is now stayed since DEBTORS have instituted this instant action.

9

**FIRST AMENDED COMPLAINT**

23. These defendants conduct in intentionally concealing material facts under false pretenses with the intent to harm others, including plaintiff, justifies punitive damages. This conduct was approved, ratified and/or authorized by one or more of the officers, directors or managing agent of said defendants as more fully described above.

## SECOND CAUSE OF ACTION
## FRAUD [11 USC 523(a)(2)(A)]
(As Against All Defendants)

24. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 23 as though fully set forth at length.

21. DEFENDANTS actively, expressly, and knowingly represented facts to plaintiff, knowing of their falsity and that were intended to deceive plaintiff's understanding of the transaction, plaintiff justifiably relied upon the false representations and did induce plaintiff to advance money to the DEFENDANTS based upon said false representations. These important facts were that the *Contracts* complied with statutes and that the vehicle purchasers did actually pay the down payment contained in the *Contracts,* neither of which were true. In fact, DEBTORS even admit their intentionally illegal conduct in their Chapter 7 bankruptcy filing, Schedule B, that they had "100% ownership of sole-proprietorship Oliver Financial" and that "[t]his is an in-house financing business ... set up merely to make prospective buyers of cars think of the financing as a separate entity from the used car lot. However, all funds are owed and paid to Pacific Coast Motors. The financing company is in essence a shell used to send invoices to buyers for payments of cars from another entity other than Pacific Coast Motors to make people respect their payment plans more than paying directly to a "used car lot." Entity has no value without Pacific Coast Motors, because it is merely used to collect for Pacific Coast Motors and has no Account Receivables of their own." Said practice, besides duping consumers into believing there was a licensed finance company, violated the ASFA prohibition from used car dealers lending monies to consumers for down payments. Plaintiff did not know of this fact when purchasing the *Contracts* from PACIFIC. DEFENDANTS intended to deceive plaintiff and others by concealing this fact and selling the *Contracts* to plaintiff under said false representations. Plaintiff justifiably relied upon these defendants' false representations regarding the transactions they had entered into with the consumers, and plaintiff

purchased the *Contracts* from PACIFIC, the purchase of which has caused plaintiff substantial damages.

22.   The fraud of DEFENDNTS has resulted in damages to plaintiff. These damages include, but are not limited to putting plaintiff in a position where it (as the holder in due course of said contracts) is subject to claims from the aforementioned vehicle purchasers for violation of several statutes, actual damages in the amount of monies paid for the *Contracts* to DEFENDANTS, the costs of suit and attorney fees, prejudgment interest and consequential damages. This conduct was approved, ratified and/or authorized by one or more of the officers, directors or managing agent of said defendants as more fully described above.

23.   These defendants conduct in intentionally making false representations regarding the *Contracts* with the intent to harm others, including plaintiff, justifies ***punitive damages.*** This conduct was approved, ratified and/or authorized by one or more of the officers, directors or managing agent of said defendants as more fully described above.

### THIRD CAUSE OF ACTION
### FALSE REPRESENTATION [11 USC 523(a)(2)(A)]
(As Against All Defendants)

24.   Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 23 as though fully set forth at length.

21.   DEFENDANTS made an express false statement to plaintiff, with the intent to deceive plaintiff in order to induce plaintiff to turn over monies to DEFENDANTS, plaintiff justifiably relied upon said statement and advanced money to the DEFENDANTS based upon said false statement. These important facts were that the *Contracts* complied with statutes and that the vehicle purchasers did actually pay the down payment expressly contained in the *Contracts,* neither of which were true.  The false statement in the *Contracts* as to consumers' down payments violated the ASFA prohibition from used car dealers lending monies to consumers for down payments and duping Plaintiff into purchasing the *Contracts* after justifiably relying upon the representation that the down payments had, in fact, been made.  Plaintiff did not know of that DEFENDANTS expressly misrepresented the down payments made when purchasing the *Contracts* from PACIFIC. DEFENDANTS intended to deceive plaintiff and induce plaintiff into purchasing the *Contracts* to

11
**FIRST AMENDED COMPLAINT**

plaintiff under said expressly false representations.  Plaintiff justifiably relied upon these defendants' false representations regarding the transactions they had entered into with the consumers, and plaintiff purchased the *Contracts* from PACIFIC, the purchase of which has caused plaintiff substantial damages.

22. The fraud of DEFENDANTS has resulted in damages to plaintiff. These damages include, but are not limited to putting plaintiff in a position where it (as the holder in due course of said contracts) is subject to claims from the aforementioned vehicle purchasers for violation of several statutes, actual damages in the amount of monies paid for the *Contracts* to DEFENDANTS, the costs of suit and attorney fees, prejudgment interest and consequential damages. This conduct was approved, ratified and/or authorized by one or more of the officers, directors or managing agent of said defendants as more fully described above.

23. These defendants conduct in intentionally expressly false representations regarding the *Contracts* with the intent to harm others, including plaintiff, justifies punitive damages. This conduct was approved, ratified and/or authorized by one or more of the officers, directors or managing agent of said defendants as more fully described above.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For the principal sum of $27,419.15 plus interest thereon for the *Contracts*;
2. That the unsecured debt owed plaintiff listed by debtors in the amount of $28,000 for Account No. 37-2013-00030183-CU-FR-CTL not be discharged in bankruptcy;
3. For reasonable attorney fees;
4. For cost of suit incurred in connection herewith;
5. For exemplary damages;
6. For such other relieve as the Court may deem just and proper.

Dated: April 25, 2014              **CLEMENTS & KNOCK, LLP**

By:    /s/Rick H. Knock_____
        Rick H. Knock, Esq.
        Attorney for Plaintiff
        LINCOLN FINANCE COMPANY, INC. dba
        LINCOLN FINANCIAL SERVICES

12
**FIRST AMENDED COMPLAINT**